MARK E. FERRARIO, ESQ.
Nevada Bar No.: 1625
JACOB D. BUNDICK, ESQ.
Nevada Bar No.: 9772
**GREENBERG TRAURIG, LLP**
10845 Griffith Peak Drive, Suite 600
Las Vegas, Nevada 89135
Telephone:  702-792-3773
Facsimile:  702-792-9002
Email:       ferrariom@gtlaw.com
              bundickj@gtlaw.com

DANIEL J. TYUKODY, ESQ. (*Admitted Pro Hac Vice*)
California Bar No.: 123323
**GREENBERG TRAURIG LLP**
1840 Century Park East, Suite 1900
Los Angeles, CA 90067
Telephone:  310-586-7723
Facsimile:  310-586-7800
Email:       tyukodyd@gtlaw.com

*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT

## DISTRICT COURT OF NEVADA

|  |  |
|---|---|
| IN RE ALLEGIANT TRAVEL CO. STOCKHOLDERS DERIVATIVE LITIGATION | Master File No.:   2:18-cv-01864<br><br>**MOTION TO DISMISS AMENDED VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT**<br><br>*[Filed concurrently with Request for Judicial Notice and Declaration of Jacob D. Bundick]* |

/ / /

/ / /

MOTION TO DISMISS VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

*ACTIVE 49772219v18*

**GREENBERG TRAURIG, LLP**
10845 Griffith Peak Drive
Suite 600
Las Vegas, Nevada 89135
Telephone: (702) 792-3773
Facsimile: (702) 792-9002

GREENBERG TRAURIG, LLP
10845 Griffith Peak Drive
Suite 600
Las Vegas, Nevada 89135
Telephone: (702) 792-3773
Facsimile: (702) 792-9002

Nominal Defendant Allegiant Travel Co., ("Allegiant" or the "Company") and Individual Defendants—Maurice J. Gallagher, Jr., John Redmond, Gregory Anderson, Scott Sheldon, Eric Gust, Charles W. Pollard, Linda A. Marvin, Gary F. Ellmer, and Montie R. Brewer (the "Individual Defendants" and collectively with Allegiant, "Defendants")—by and through their counsel, the law firm of Greenberg Traurig, LLP, respectfully submit their Motion to Dismiss ("Motion") Plaintiff's Amended Verified Stockholder Derivative Complaint ("Complaint") pursuant to Federal Rules of Civil Procedure 8, 12(b)(6), and 23.1, as well as the Private Securities Litigation Reform Act (the "Reform Act" or "PSLRA"), 15 U.S.C. § 78u-4 (2012). This Motion is based on the files and pleadings in this matter, the accompanying Memorandum of Points and Authorities, the concurrently filed Request for Judicial Notice, the concurrently filed Declaration of Jacob D. Bundick, and such oral argument as the Court may permit.

# I.   **INTRODUCTION**[1]

The Complaint fails to state a claim under Rules 12(b)(6) and 23.1 of the Federal Rules of Civil Procedure, primarily because it fails to adequately plead demand futility, thus depriving Plaintiffs of standing.[2] The Complaint also fails to adequately plead the alleged causes of action for breach of fiduciary duty, unjust enrichment, and a purported violation of Section 14(a) of the 1934 Securities Exchange Act.

The Court has subject matter jurisdiction over this case pursuant to the Section 14(a) claim and exercises supplemental jurisdiction over the pendent state law breach of fiduciary duty and unjust enrichment claims. As to the state law

---

[1] All "¶" citations refer to the Complaint. Throughout this brief, all emphasis is added unless otherwise stated, and we omit internal citations from cited cases. Defendants respectfully request that the Court take judicial notice of **Exhibits 1-5** attached to the concurrently filed Declaration of Jacob D. Bundick, as set forth in the concurrently filed Request for Judicial Notice.

[2] *See Shoen v. SAC Holding Corp.*, 122 Nev. 621, 634 (2006) (a "shareholder's failure to sufficiently plead compliance with the demand requirement deprives the shareholder of standing."); *Smaellie v. City of Mesquite*, 393 P.3d 660 (Nev. 2017) (standing is a jurisdictional mandate).

1

MOTION TO DISMISS VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

*ACTIVE 49772219v18*

claims, the Court is required to apply the law of the State of Nevada.[3]   Nevada has what is arguably the Nation's strongest set of statutes when it comes to presuming director independence in the course of a court's application of the business judgment rule to a particular set of facts, a position that Nevada's Supreme Court has zealously guarded.[4]   Among these is NRS 78.138(7)—Nevada's exculpatory statute—which requires "*intentional misconduct, fraud, or a knowing violation of law*" on the part of directors for them to face personal liability.[5]   This is important because the primary allegation the Complaint makes in support of pleading demand futility is that a majority of Allegiant's Board of Directors ("Board") supposedly face personal liability for the alleged transgressions described in the Complaint. ¶ 133(A)-(F).

The significance of NRS 78.138(7) was recently highlighted by the Nevada Supreme Court in *Chur v. Eighth Judicial Dist. Ct.*, 458 P.3d 336, 340 (Nev. 2020), which held that NRS 78.138(7) "provides the *sole avenue* to hold directors and officers individually liable for damages arising from official conduct."   In so doing, the Court "disavow[ed]" what it characterized as prior *dicta* in *Shoen* which

---

[3] *See Baker v. GMC,* 522 U.S. 222, 249 (1998) ("In construing state law, we must determine how the highest court of the State would decide an issue.").

[4] *See* NRS 78.138(3) (statutory presumption of good faith); NRS 78.138(8) (statutory presumption that the business judgment rule applies to "all cases, circumstances and matters"); NRS 78.012(3) (Nevada's business judgment rule "must not be supplanted or modified by laws or judicial decisions of any other jurisdiction"); *see also Shoen*, 122 Nev. at 634 (under Nevada law, a corporation's board ordinarily has "full control over the affairs of the corporation," including the decision to sue or not sue on its behalf); *Wynn Resorts, Ltd. v. Eighth Judicial Court of State*, 399 P. 3d 334, 343 (Nev. 2017) ("Nevada's statutory business judgment rule precludes courts from reviewing the substantive reasonableness of a board's business decision"; "a court that applies the business judgment rule will not 'second-guess' a particular decision . . . if the requirements of the business judgment rule are satisfied").

[5] Pursuant to NRS 78.138(7), directors and officers cannot be held liable for damages resulting from an act or failure to act unless:
(a) The trier of fact determines that the presumption established by [NRS 78.138(3)—the statutory of presumption of good faith] has been rebutted; and
(b) It is proven that:
   (1) The director's or officer's act or failure to act constituted a breach of his or her fiduciary duties as a director or officer; *and*
   (2) Such breach involved *intentional misconduct, fraud or a knowing violation of law*. NRS 78.138(7).

GREENBERG TRAURIG, LLP
10845 Griffin Peak Drive
Suite 600
Las Vegas, Nevada 89135
Telephone: (702) 792-3773
Facsimile: (702) 792-9002

2

*ACTIVE 49772219v18*

GREENBERG TRAURIG, LLP
10845 Griffin Peak Drive
Suite 600
Las Vegas, Nevada 89135
Telephone: (702) 792-3773
Facsimile: (702) 792-9002

suggested that allegations of "gross negligence" might suffice under the statute.  *Id.* at 340-42.  In granting review pursuant to a writ of mandamus, the Court made express reference to the fact that federal district courts had erroneously relied upon its prior language in *Schoen.*[6]

While *Chur* is obviously very important to the Court's demand futility analysis, the fact is the Complaint's spartan allegations pertaining to demand futility—three pages out of a 49-page Complaint, one paragraph among 151 paragraphs—should not have sufficed even under a "gross negligence" standard.  It is not just about quantity, but also the quality of the Complaint's demand futility allegations that render them deficient, as they consist of boilerplate assertions that have long been regarded as insufficient.  There is nothing alleged in the Complaint that comes close to pleading that any of the Individual Defendants engaged in "intentional misconduct, fraud, or a knowing violation of the law" as required by NRS 78.138(7).

As for the unjust enrichment claim, it is based entirely on supposedly illegal insider trading, but the insider trading allegations fail for a multitude of reasons, some of which have been previously recognized by this Court.  Finally, the Section 14(a) claim comes without any of the required supporting detail and practically defines what is insufficient to plead this claim.

Because Plaintiffs have failed to plead their demand futility allegations with the requisite particularity, and failed to plead any viable causes of action, the Complaint should be dismissed.

## II.   FACTUAL ALLEGATIONS

The Complaint is a standard kind of derivative case that often follows on the heels of a securities class action, in this case *Brendon v. Allegiant Travel Co., et al.,*

---

[6] *See Chur*, 458 P.3d at 339 ("Because federal courts in Nevada, as well as the district court . . . have relied on *Shoen* to imply a bifurcated tract for establishing breaches of fiduciary duties of care and loyalty—in contravention of NRS 78.138's plain language—the Directors argue that this writ petition presents a purely legal question in need of clarification.  We agree.").

3

MOTION TO DISMISS VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

GREENBERG TRAURIG, LLP
10845 Griffin Peak Drive
Suite 600
Las Vegas, Nevada 89135
Telephone: (702) 792-3773
Facsimile: (702) 792-9002

1  No. 2:18-cv-01758 (D. Nev.) ("*Brendon*" or the "Securities Class Action").[7]  The

2  Complaint cites the *Brendon* litigation (referring to it as *Checkman*) as one of several

3  ways that the Individual Defendants allegedly "subjected Allegiant to extensive

4  litigation." ⁋ 12.[8]  Much of the Complaint reads like *Brendon-redux*, with large

5  portions quoting an April 15, 2017 *60 Minutes* broadcast (the "Broadcast") that was

6  critical of Allegiant's alleged safety and maintenance practices, along with various

7  articles from the *Tampa Bay Times*, and other media sources.  ⁋⁋ 95-106.  The Court

8  is obviously familiar with the facts alleged in *Brendon*, having recently granted

9  preliminary approval to a $4 million settlement in that case, with a final approval

10  hearing set for May 14, 2020.[9]

11      The next largest portion of the Complaint quotes extensively from a letter

12  dated over four years ago (January 26, 2016) by CtW Investment Group, an

13  "activist" investor (⁋ 89) that then managed part of the Teamster's pension fund.  ⁋⁋

14  85-88.  These are followed by allegations that are of similar vintage made in the so-

15  called "Teamsters Report."  ⁋⁋ 90-92.[10]

16  / / /

---

[7] The precursor to the Complaint, the *Blackburn* complaint, was filed on July 20, 2018, or less than three months after the original complaint in *Brendon* (then known as *Checkman*) was filed. *See Charles Blackburn v. Maurice J. Gallagher Jr., et al.*, Case No. 2:18-cv-01975-GMN-PAL (D. Nev. July 20, 2018).  *Blackburn* was later consolidated with *Fullenkamp v. Maurice J. Gallagher, Jr., et al.*, (D. Nev. Sept. 26, 2018), resulting in the Complaint.

[8] The Complaint also alleges that Allegiant settled an employment lawsuit (⁋⁋ 12, 75-84) and settled a personal injury lawsuit (⁋⁋ 12, 94), two ordinary events for an airline with thousands of employees that in ordinary times flies millions of passengers a year.  (The Complaint notes that Allegiant "operates the ninth largest commercial airline in the United States." ⁋ 4.)

[9] *See* Ex. 1 (Federal Securities Action Order Granting Plaintiffs' Motion for Preliminary Approval of Class Action Settlement).

[10] These latter allegations are copied virtually verbatim from a parallel state court derivative case that was recently dismissed because the plaintiff failed to comply with the continuous ownership requirement. *See Charlotte Woolery v. Maurice J. Gallagher, Jr., et al.*, Case No. A-18-785044-C (Nevada Eighth Jud. Dist. Ct. *Compare* Ex. 2 (*Woolery* complaint at ⁋⁋ 68-74) *with* Complaint at ⁋⁋ 85-88.  Another parallel state court derivative case entitled *City of Warren Police and Fire Retir. Sys. v. Maurice J. Gallagher, Jr. et al.*, Case No. A-19-804089-C (Nevada Eighth Jud. Dist. Ct.) is pending.  Defendants in *City of Warren* have filed motions to dismiss and to stay that case.  All defendants in this case are defendants in *City of Warren*; this case also includes two officers (Gregory Anderson, Chief Accounting Officer/Sr. VP Treasury, and Eric Gust, VP Operations) who are not named in *City of Warren*.

4

MOTION TO DISMISS VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

1    One of the main takeaways is how dated these allegations are.  The Complaint

2   cites a November 2016 article that refers to Allegiant's jets as being "an average of

3   twenty-two years old" and says, "Allegiant relies most heavily on McDonnell

4   Douglas MD-80s, an aging model retired by all but two other major U.S. carriers."

5   ¶ 97.   However, the Complaint's second paragraph alleges that by May 2018,

6   Allegiant had revamped its entire fleet: "As of May 23, 2018, Allegiant operated a

7   fleet of 99 *Airbus* aircraft." ¶ 2.[11]

8    The Complaint also says that following the CtW letter the Individual

9   Defendants "failed to reshape or expand the Board" (¶ 89), but in fact the Board was

10   expanded, as the Complaint acknowledges when it argues that demand futility should

11   be judged by the six-member Board Allegiant had when the original complaint was

12   filed in *Blackburn,* rather than the seven-member Board Allegiant has today.  ¶ 133

13   ("At the time this action was commenced, Allegiant's Board consisted of six directors

14   . . . .").

15    Thus, there is a powerful sense of ancient history to the Complaint, as most

16   of what Plaintiffs argue should have been done previously, has in fact been done.

17   Even the section of the Complaint that attempts to add something new by

18   describing the contents of incident reports that Plaintiffs allegedly obtained from

19   the FAA (via a FOIA request) mostly consist of things that are quite dated.  ¶¶ 124-

20   29.

21    What is more important about the Complaint's factual allegations is what is

22   not there.  Namely, there is no allegation that the FAA, Allegiant's primary regulator,

23   ever had serious concerns about Allegiant; and there is no allegation that anyone was

24   / / /

25   / / /

26   / / /

27

28   [11] *See also* ¶¶ 71-72 (Allegiant had the oldest fleet in the industry but retired all of its MD-80 aircraft by December 3, 2018).

GREENBERG TRAURIG, LLP
10845 Griffith Peak Drive
Suite 600
Las Vegas, Nevada 89135
Telephone: (702) 792-3773
Facsimile: (702) 792-9002

5

MOTION TO DISMISS VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

*ACTIVE 49772219v18*

**GREENBERG TRAURIG, LLP**
10845 Griffin Peak Drive
Suite 600
Las Vegas, Nevada 89135
Telephone: (702) 792-3773
Facsimile: (702) 792-9002

killed or seriously injured on an Allegiant flight during the five-year period addressed in the Complaint.[12]

## III.   PLAINTIFF'S BOILERPLATE ALLEGATIONS COME NOWHERE CLOSE TO ADEQUATELY PLEADING EITHER DEMAND FUTILITY OR VIABLE CLAIMS

### A.   The Heightened Standard for Pleading Demand Futility and the Business Judgment Rule in Nevada.

Federal Rule of Civil Procedure 23.1 imposes a "heightened pleading standard" for any federal derivative action, requiring a plaintiff to "state with *particularity*: (A) any effort by the plaintiff to obtain the desired action from the directors or comparable authority . . . and (B) the *reasons for* not obtaining the action or *not making the effort*." Fed. R. Civ. P. 23.1.  Rule 23.1 "requires substantially more than Rule 8(a) notice pleading," and "[m]ere allegations of improper motives are especially inadequate when the challenged action is not *facially* suspect . . . ."  *Gaubert v. Fed. Home Loan Bank Bd*., 863 F.2d 59, 68 (D.C. Cir. 1988) (emphasis in original).[13]

Rule 23.1's rigorous procedural pleading requirement fits hand in glove with Nevada's substantive standard for pleading demand futility, which protects "clearly discretionary directorial conduct and corporate assets by discouraging unnecessary, unfounded, or improper shareholder actions."  *Schoen,* 122 Nev. at 633; *see also Aronson v. Lewis*, 473 A.2d 805, 809 (Del. 1984) (demand requirement is "a rule of

---

[12] An arguable exception is an allegation that a passenger claimed to have experienced "head neck and brain injuries" from a flight in 2016 that encountered "severe turbulence" which Allegiant settled for a confidential amount.  ¶ 94.  The Complaint does not allege that the aircraft involved was mechanically unsafe, or that the pilots acted improperly, and from the facts alleged it is impossible to determine the true severity of the passenger's injuries.

[13] *See also La. Mun. Police Employees' Retirement Sys. v. Wynn*, 829 F.3d 1048, 1058 (9th Cir. 2016) (Rule 23.1 imposes a "heightened pleading standard"); *In re Am. Apparel, Inc*., 2015 U.S. Dist. LEXIS 191466, at *37 (C.D. Cal. Apr. 28, 2015) ("Because of the extraordinary nature of a shareholder derivative suit, Rule 23.1 establishes stringent conditions for bringing such a suit.") (citing *Potter v. Hughes*, 546 F.3d 1051, 1058 (9th Cir. 2008)); *In re Am. Int'l Grp., Inc. Deriv. Litig*., 700 F. Supp. 2d 419, 430 (S.D.N.Y. 2010) (Rule 23.1 raises the "pleading standard higher than the normal standard applicable to the analysis of a pleading challenged under FRCP 12(b)(6)"); *Heit v. Baird*, 567 F.2d 1157, 1160 (1st Cir. 1977) (Rule 23.1 "represents a deliberate departure from the relaxed policy of 'notice' pleading promoted elsewhere in the Federal Rules. The requirement places an initial burden on the stockholder 'to demonstrate why the directors are incapable of doing their duty,' and failure to meet this burden requires dismissal of the suit").

MOTION TO DISMISS VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

*ACTIVE 49772219v18*

substantive right designed to give a corporation an opportunity to rectify an alleged wrong without litigation, and to *control any litigation* which does arise"); *Kamen v. Kemper Fin. Serv., Inc.*, 500 U.S. 90, 96 (1991) (only pleading of "extraordinary circumstances" excuses demand).

There are two generally recognized standards for assessing demand futility, the selection of which depends on whether a plaintiff's core allegations are grounded in actual action by the board, or by the board's alleged failure to act. The first involves the *Aronson* test which asks whether "under the particularized facts alleged, a reasonable doubt is created that: (1) the directors are disinterested and independent and (2) [whether] the challenged transaction was otherwise the product of a valid exercise of business judgment." *Aronson*, 473 A.2d at 814. The second involves the *Rales* test (after *Rales v. Blasband*, 634 A.2d 927 (1993)), which focuses upon the conflict issue alone, because its essence is the alleged failure to act by the board (so there is no "challenged transaction" to judge). *See Rales,* 634 A.2d at 934 ("the *particularized factual allegations* . . . [must] create a reasonable doubt that, as of the time the complaint is filed, the board of directors could have properly exercised its independent and disinterested business judgment in responding to a demand").

By and large, the Complaint's allegations appear to be based upon an alleged failure to act. For example, paragraph 120 claims: "The Individual Defendants knew for years about the Company's improper safety and maintenance practices yet failed to correct them. As such, the Individual Defendants knew of the reporting problems but did nothing to rectify or prevent them." However, there are several passages in the Complaint which vaguely suggest intentional acts. *E.g.*, ¶ 121 ("the Individual Defendants breached their fiduciary duties by knowingly employing improper reporting practices . . . in violation of applicable regulations and rules and then knowingly disseminated false and misleading filings . . . [that] subjected Allegiant to the Securities Class Action."); ¶ 137 ("The Individual Defendants breached their fiduciary duties . . . by willfully, recklessly and/or

GREENBERG TRAURIG, LLP
10845 Griffith Peak Drive
Suite 600
Las Vegas, Nevada 89135
Telephone: (702) 792-3773
Facsimile: (702) 792-9002

7

GREENBERG TRAURIG, LLP
10845 Griffith Peak Drive
Suite 600
Las Vegas, Nevada 89135
Telephone: (702) 792-3773
Facsimile: (702) 792-9002

intentionally failing to perform their fiduciary duties"). Regardless of how it is expressed, the Complaint's core theory seems to be that the Individual Defendants willfully failed to stop the alleged conduct or conditions that allegedly gave rise to the Federal Securities Action.[14]  However, a $4 million settlement puts the Securities Class Action in the bottom quartile of all such cases for 2019,[15] which reflects the problematic issues that case had, notwithstanding the fact that it survived a motion to dismiss.[16]  Thus, this case is probably best judged under the *Rales* standard, but regardless, because it is so plainly deficient, it does not really matter what standard the Court applies.[17]

> **B.    The Complaint Fails to Allege That a Majority of the Board is Incapable of Making a Decision Protected Under the Business Judgment Rule.**

For purposes of determining whether the demand futility requirement has been satisfied, the Complaint must adequately allege that a majority of the Directors on Allegiant's six-member Board (as of the time of the Complaint's filing) were

---

[14] The Complaint does not appear to be based upon what is generally known as a *Caremark* claim, where "plaintiffs argue that the defendants are liable for damages that arise from a failure to properly monitor or oversee employee misconduct or violations of law."  *In re Citigroup Inc. Shareholder Deriv. Litig.*, 964 A.2d 106, 123 (Del. Ch. 2009) (citing *In re Caremark Int'l Inc. Deriv. Litig.*, 698 A.2d 959 (Del. Ch. 1996).  Plaintiffs appear to simply disagree with Board decisions, as opposed to alleging that the Board did not deliberate and consider the issues raised in the Complaint.  Whether the Complaint includes a *Caremark* claim or not does not really matter as such a claim "is possibly the most difficult theory in corporation law upon which a plaintiff might hope to win a judgment." *Melbourne Municipal Firefighters' Pension Trust Fund* v. *Jacobs*, 2016 WL 4076369, at *7 (Del. Ch. 2016).

[15] *See* Ex. 3 (Cornerstone Research *2019 Review and Analysis of Securities Class Action Settlements* at 19 Appendix 1) ($5.6 million average settlement in bottom quartile).

[16] *See* Ex. 4 (Order of September 9, 2019) (the "Order").  Defendants do not wish to reargue the issues resulting in the Order, other than to say that in their view the Court's acknowledgment that Allegiant's senior executives occasionally piloted the very planes that they allegedly knew to be unsafe (Order at 18), should have been outcome determinative as to all of the very similar statements at issue in *Brendon* pursuant to *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007) ("the inference of scienter must be more than merely 'reasonable' or 'permissible'—it must be cogent and compelling, and thus strong in light of other explanations"), because there is nothing "cogent and compelling" about people being indifferent to the safety of the very planes they were piloting.

[17] One can also argue that following the adoption of NRS 78.138(8)—the statutory presumption that the business judgment rule applies to "*all* cases, circumstances and matters"—the *Aronson* two-step analysis collapses into a single *Rales*-type test in Nevada.

---

8

MOTION TO DISMISS VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

*ACTIVE 49772219v18*

incapable of making a decision protected by the business judgment rule.[18]   The Complaint's demand futility allegations are contained in paragraph 133, which is divided into subparagraphs "A" through "I," each of which fails to satisfy Nevada's high standards for pleading demand futility.   One allegation does not even make sense, namely the assertion that demand is futile as to Directors Marvin, Ellmer, Pollard, and Redmond because as current or past Audit Committee members, they allegedly "knew that the Company's financial statements were inaccurate and misleading, yet they knowingly approved the filing and dissemination of the financial statements, and therefore face a substantial likelihood of being held liable for breaching their fiduciary duties."   ¶ 133(I).   However, there is no allegation of false financial statements in the Complaint, nor was there in *Brendon*, and this appears to be an errant hangover from a form template.

### 1.   The Breach of Fiduciary Duty Allegations are Deficient.

The primary reason the Complaint offers in support of its demand futility allegations is the usual suspect that a majority of the members of the Board would not be willing to sue themselves.[19]   Without specific supporting details, which are not in the Complaint, this kind of allegation has long been recognized as deficient. *See Shoen,* 122 Nev. at 639-40 ("Allegations of mere threats of liability . . . do not show sufficient interestedness to excuse the demand requirement.").   Instead, [i]nterestedness because of potential liability can be shown only in *those rare cases* where defendants' actions were *so egregious* that a *substantial likelihood* of director liability exists."   *Id.* at 640; *see also In re Sagent Tech.*, 278 F. Supp. 2d 1079, 1089 (N.D. Cal. 2003) ("A plaintiff may not 'bootstrap allegations of futility' by pleading merely that 'the directors . . . would be reluctant to sue themselves.'").

---

[18] *See Wynn*, 829 F.3d at 1058 ("the relevant board is the board as it was constituted when the shareholders filed their . . . complaint.").

[19] *See* ¶ 132 ("Such demand would be a futile and useless act because the Board is incapable of making an independent and disinterested decision to institute and vigorously prosecute this action.").

MOTION TO DISMISS VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

*ACTIVE 49772219v18*

**GREENBERG TRAURIG, LLP**
10845 Griffin Peak Drive
Suite 600
Las Vegas, Nevada 89135
Telephone: (702) 792-3773
Facsimile: (702) 792-9002

GREENBERG TRAURIG, LLP
10845 Griffith Peak Drive
Suite 600
Las Vegas, Nevada 89135
Telephone: (702) 792-3773
Facsimile: (702) 792-9002

Pursuant to the Nevada Supreme Court's decision in *Chur*, the "substantial likelihood of director liability" evaluation must be made in light of NRS 138(7), which "provides the sole avenue" for assessing director liability. *Chur*, 458 P.3d at 340. That exculpatory statute requires allegations supporting "intentional misconduct, fraud, or a knowing violation of law." To say that is not alleged in the Complaint would be an understatement.[20]

For example, the Complaint alleges that Gallagher "faces a substantial likelihood of liability as he is named as a defendant in the Securities Class Action, and any investigation or misconduct could potentially increase his liability in that case, and therefore Gallagher . . . cannot independently consider a demand." ¶ 133(D). However, the Securities Class Action has been given preliminary approval (with a final approval hearing set for May 14, 2020), and there have been no objections filed to date. Thus, under a "substantial likelihood" standard read in light of *Chur*, it is hard to see how Gallagher faces the prospect of personal liability outside the scope of the exculpatory statute. Any other conclusion would be wholly speculative. *See Herbst Gaming, Inc. v. Heller*, 122 Nev. 877, 887 (Nev. 2006) ("Alleged harm that is speculative or hypothetical is insufficient.").[21]

The Complaint also alleges that "all Director Defendants . . . face a substantial likelihood for breaching their fiduciary duties for . . . approving the Company's dangerous cost-cutting safety measures" and even after "the Company purchased new aircraft, the Director Defendants still evade maintenance practices to this day,

---

[20] Simply mouthing the right words is insufficient to satisfy the particularity requirement. *See, e.g., Gaubert*, 863 F.2d at 68 (under Rule 23.1, "mere allegations or conclusory statements regarding directors' dual allegiances, self-interest, or control by others is insufficient"); *In re Kauffman Mut. Fund Actions*, 479 F.2d 257, 263-64 (1st Cir. 1973) (1973) ("it is clear that the 'particularity' [required by Rule 23.1] must appear in the pleading itself; the stockholder may not plead in general terms, hoping that, by discovery or otherwise, he can later establish a case").

[21] *See also In re Facebook, Inc., IPO Secs. & Deriv. Litig.*, 922 F. Supp. 2d 445, 474-75 (S.D.N.Y. 2013) (derivate action was premature for failing to allege non-speculative damages); *In re Cray Inc.*, 431 F. Supp. 2d 1114, 1133 (W.D. Wash. 2006) (damages allegations "must be more than speculative and conclusory").

10

MOTION TO DISMISS VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

*ACTIVE 49772219v18*

GREENBERG TRAURIG, LLP
10845 Griffith Peak Drive
Suite 600
Las Vegas, Nevada 89135
Telephone: (702) 792-3773
Facsimile: (702) 792-9002

thereby endangering Allegiant's passengers." ¶ 133(B). [22]   There are two main problems with these allegations:

First, the Complaint's factual allegations *do not* actually allege that the Directors "approved dangerous cost cutting measures," or that they acted to "evade maintenance practices" despite purchasing new aircraft.  The reason the Complaint does not allege this (outside of these conclusory paragraphs) is that such allegations would be patently absurd.  The Complaint goes out of its way to describe the wealth of airline experience possessed by Allegiant's Board.  ¶¶ 39-62.  Who, in their right mind, much less experienced hands in the airline industry, would buy an expensive fleet of new aircraft with the intention of deliberately failing to maintain them, thereby knowingly harming passenger safety?  In making its demand futility assessment pursuant to Rule 23.1 and Nevada substantive law, the Court is required to evaluate the plausibility of the Complaint's demand futility allegations,[23] and here the Complaint's allegations are unsupported by facts and ridiculously implausible.

Second, it is not Plaintiffs' role to decide what appropriate safety and maintenance practices are and are not.  That is the role of the FAA.  The Court can take judicial notice of the fact that the airline industry is one of the most highly regulated industries in the Nation.[24]  Every issue, from the seemingly small, to the potentially significant, is subject to intense FAA scrutiny and record-keeping.  Indeed, that is how Plaintiffs received the incident reports from 2015-19 that make up a portion of the Complaint.  ¶¶ 124-29.  In this light, these allegations only serve

---

[22] There is a similar allegation at ¶ 133(A) that "all Director Defendants" "directly participated in and approved of the Company's lax safety and maintenance procedures . . . and therefore are substantially likely to be held liable for the misconduct complained of herein."

[23] *See supra* at 8 & n.13; *see also Dorvit v. Winemaster*, 950 F.3d 984, 989 (7th Cir. 2020) ("the ability to show demand futility is a substantive component of the strength of the derivative case").

[24] *See Wietschner v. Monterey Pasta Co.*, 294 F. Supp. 2d 1102, 1109 (N.D. Cal. 2003) (courts may take judicial notice of facts of common knowledge in ruling on motion to dismiss); *Bank of Am., N.A. v. Huffaker Hills Unit No. 2 Residence Ass'n*, 2019 U.S. Dist. LEXIS 46025, at *8-9 (D. Nev. Mar. 19, 2019) (similar).

11

MOTION TO DISMISS VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

to undermine Plaintiffs' case, as they show that the FAA continued to allow Allegiant to fly despite the issues raised in these incident reports.  Any major U.S. airline will encounter some mechanical issues, and while airlines strive for 100% compliance, it is an ever-vanishing horizon.  It takes incredible audacity for a plaintiff to say that his opinion about safety and maintenance should be substituted for that of the FAA, or for that matter, of the Board.  It also helps explain why the business judgment rule exists in the first place.

The other alleged aspects of Director liability stem from allegations of alleged insider trading, and a supposed violation of Section 14 of the '34 Act.  Both of these are identified as separate causes of action (apart from the alleged breach of fiduciary duty) and for that reason are discussed in separate sections below.  However, before turning to those issues, Defendants address the Complaint's "miscellaneous" reasons offered for Director recusal, which are a hodgepodge of things that have long been regarded as insufficient.

The assertion that Marvin should be disqualified because she allegedly has had "a long-standing and lucrative business relationship with . . . Gallagher . . . since 1988" and they have lived "within one mile from each other for over a decade" (¶ 133(G)), or that Ellmer should be disqualified because *25 years ago*, he worked with Gallagher at another company (¶ 133(I)), are the kinds of allegations that have long been rejected out-of-hand.  *See In re DISH Network Deriv. Litig.*, 401 P.3d 1081, 1091 (Nev. 2017) (the mere existence of past relationships, without more, is not enough to suggest that a board member will abandon his duty to the corporation in favor of a business associate); *McMahon ex rel. Uranium Energy Corp. v. Adnani*, No. 74196, 2019 Nev. Unpub. LEXIS 210, at *3-4 (Nev. Feb. 22, 2019)  (NSOP)  ("the *particularized pleadings* must demonstrate why the relationship creates a reasonable doubt as to the director's disinterestedness").[25]

---

[25] *See also Kahn v. M&F Worldwide Corp.*, 88 A.3d 635, 649 (Del. 2014) ("Bare allegations that directors are friendly with, travel in the same social circles as, or have past business relationships with the proponent of a transaction or the person they are investigating are not enough to rebut

MOTION TO DISMISS VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

*ACTIVE 49772219v18*

GREENBERG TRAURIG, LLP
10845 Griffin Peak Drive
Suite 600
Las Vegas, Nevada  89135
Telephone: (702) 792-3773
Facsimile: (702) 792-9002

1  Many positions on boards of directors are filled by people who have crossed paths

2  with one another, particularly in highly-regulated industries like airlines.  If the

3  kind of reasoning offered in the Complaint sufficed, one would almost never have

4  a board that qualified for the protections of the business judgment rule.

5  Fortunately, that is not the law.

6  Regarding Redmond's supposedly "interwoven business relationship with

7  Defendant Gallagher," it is based upon his (and Gallagher's) minority interest in a

8  partnership that owned property that—five years ago—Allegiant leased for its

9  headquarters.  There is no allegation that as minority partners Redmond and

10  Gallagher controlled the partnership, or that the terms of the lease were above

11  market, or that the partnership extracted any unfair advantage from Allegiant.[26]

12  There are simply no facts alleged that suggest any unfairness to Allegiant in

13  connection with these vaguely alleged, stale claims.[27]

## 2.    The Insider Trading Allegations Are Deficient.

### i.    *Nevada is Unlikely to Recognize a Common-Law Claim for Insider Trading.*

17  While the issue is unresolved under Nevada state law, it is quite doubtful that

18  Nevada's highest court would recognize a common-law breach of fiduciary duty

GREENBERG TRAURIG, LLP
10845 Griffin Peak Drive
Suite 600
Las Vegas, Nevada 89135
Telephone: (702) 792-3773
Facsimile: (702) 792-9002

---

the presumption of independence."); *Beam v. Stewart*, 845 A.2d 1040, 1051 (Del. 2004) (allegations that directors "moved in the same circles, attended the same weddings, developed business relationships before joining the board, and described each other as 'friends,' even when coupled with [the interested party's] 94% voting power, are insufficient, without more, to rebut the presumption of independence").

[26] The 2016 proxy statement cited in the Complaint (¶ 111) reports that the entities through which Redmond and Gallagher invested went through a bankruptcy; that neither of them had received a distribution from the partnership since 2012, and that they did not expect to receive one in the future. Ex. 5 at 31-32 (5-12-16 Schedule 14A).  Thus, there is no factual evidence offered in the Complaint suggesting that the Directors unduly profited or that Allegiant was disadvantaged in connection with this lease.

[27] The Complaint also names three non-Director defendants: Anderson, Sheldon, and Gust.  Aside from the scant insider trading allegations pertaining to Anderson and Sheldon (which are discussed *infra* at 18-21), the Complaint barely mentions these defendants.  As to Gust, who is not alleged to have sold, the only substantive allegation is that in his capacity as Vice President of Operations, he defended Allegiant in responding to CBS following the Broadcast.  ¶ 105. While for obvious reasons the focus of this Motion is on the Directors, it should be noted that the allegations against the non-Director defendants are even more deficiently pled.

MOTION TO DISMISS VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

*ACTIVE 49772219v18*

GREENBERG TRAURIG, LLP
10845 Griffin Peak Drive
Suite 600
Las Vegas, Nevada 89135
Telephone: (702) 792-3773
Facsimile: (702) 792-9002

claim based upon alleged insider trading.  Most states confronted with this issue have not recognized such a claim, and the modern trend is not to do so.  In assessing this issue, the Court is required to determine how it believes the Nevada Supreme Court would decide the issue.  *See Alliance for Prop. Rights & Fiscal Responsibility v. City of Idaho Falls*, 742 F.3d 1100, 1102 (9th Cir. 2013) ("When the state's highest court has not squarely addressed an issue, we must predict how the highest state court would decide the issue.").

In Nevada (and elsewhere), a defendant is only liable for a breach of fiduciary duty if the plaintiff suffered an injury that was proximately caused by the breach.  *See Stalk v. Mushkin*, 125 Nev. 21, 28 (2009) (a fiduciary duty claim "seeks damages for injuries that result from the tortious conduct of one who owes a duty to another by virtue of the fiduciary relationship").   Many jurisdictions with similar requirements have concluded that insider trading cannot satisfy the causation element because such trading does no harm to the corporation.[28]  Other jurisdictions have held these common-law fiduciary duty claims are barred as superfluous because they pose the risk of double recovery given the extensive remedies available under federal securities regulation.[29]  The few jurisdictions that stand as recognizing this cause of action are based on quite dated case law, some of which might be subject to change.[30]

---

[28] *See, e.g., In re Cray Inc.*, 431 F. Supp. 2d 1114, 1133 (W.D. Wash. 2006) (concluding Washington state courts "would decline to adopt a common law derivative claim for insider trading where there is no allegation of damage to the nominal defendant corporation"); *Daisy Sys. Corp. v. Finegold*, 1988 U.S. Dist. LEXIS 16765, at *13-15 (N.D. Cal. Sept. 19, 1988) (concluding California legislature intended statutory scheme to be exclusive basis for insider trading remedies); 3A William Fletcher, Fletcher Cyclopedia of the Law of Private Corporations § 1174 (2002) ("most courts considering the issue have rejected a common-law corporate cause of action against directors and officers for insider trading").

[29] *See, e.g., Schein v. Chasen,* 313 So.2d 739, 746 (Fla. 1975); *Freeman v. Decio,* 584 F.2d 186, 196 (7th Cir. 1978).

[30] The leading case in Delaware is *Brophy v. Cities Service, Inc.,* 70 A.2d 5, 8 (Del. 1949), and the leading case in New York is *Diamond v. Oreamuno*, 24 N.Y.2d 494, 502 (N.Y. 1969).  There is a question whether *Diamond* is still good law.  *See, e.g., Frankel v. Slotkin*, 795 F. Supp. 76, 81 (E.D.N.Y. 1992) ("In the years since the *Diamond* decision the class action suit under Rule 10b-5 has developed into an effective remedy for insider trading.").

14

MOTION TO DISMISS VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

In addition to the fact that recognizing a common-law cause of action for insider trading is against the modern trend, the State of Nevada has enacted some of the most director-friendly statutes in the Nation.  A long line of Nevada Supreme Court cases, recently culminating in *Chur*, stand as a bulwark protecting the presumption of director independence and the applicability of the business judgment rule.  *Chur* just recently held that NRS 78.138(7) "provides the *sole avenue* to hold directors and officers individually liable for damages arising from official conduct," and criticized its prior decision in *Shoen* for giving rise to a purported common-law exception of "gross negligence" to the statutory standard.  *Chur*, 458 P.3d at 340.  The odds that Nevada's highest court would suddenly turn against that tide and acknowledge a common-law insider trading cause of action—which would inevitably be used to attack director independence, as is being attempted here—are quite slim indeed.

### ii.   *The Complaint Does Not Allege Any Facts Supporting Insider Trading*.

In the unlikely event Nevada were to recognize a common-law cause of action for insider trading, that cause of action would still not be sufficiently pled here based on the Complaint's vague factual allegations.   Jurisdictions which recognize a common-law cause of action for insider trading require allegations showing that "*each sale* by each individual defendant was entered into and completed *on the basis of, and because of*, adverse material non-public information."  *Guttman v. Huang*, 823 A.2d 492, 505 (Del. Ch. 2003).  To say that is not alleged in the Complaint would be an understatement, because as there is *not one specific sale* alleged in the entirety of the Complaint, much less an allegation as to what any specific Defendant *knew at the time of the sale* which rendered it illegal.

Instead of pleading specific knowledge, by a specific Defendant, linked to a specific sale, the Complaint is awash in generalities, as exemplified by the fact that the Complaint cannot even make up its mind as to the total amount of insider trading

**GREENBERG TRAURIG, LLP**
10845 Griffin Peak Drive
Suite 600
Las Vegas, Nevada 89135
Telephone: (702) 792-3773
Facsimile: (702) 792-9002

MOTION TO DISMISS VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT
*ACTIVE 49772219v18*

that is allegedly at issue.  This amount is alternatively described in the Complaint as: $6.4 million (¶ 122); $50.85 million (¶¶ 5, 112); $89.2 million (¶¶ 113-17 (totaling all Individual Defendant allegations)); and $91.5 million (¶ 118). The Complaint seems completely unaware of these discrepancies, which does not augur well in favor of Plaintiffs subsuming the role of the Board in deciding whether to pursue this case.

Many of the reasons why the Complaint's factual allegations fail to adequately plead a common-law cause of action for insider trading are the same as those the Court recognized in *Brendon,* when it held the insider trading allegations in that case were inadequately pled under federal law.  Ex. 4 (Order) at 16-17.  Under federal law, insider trading allegations are only sufficient when they "allege 'unusual' or 'suspicious' stock sales." *Ronconi v. Larkin*, 253 F.3d 423, 435 (9th Cir. 2001).  The Court's Order recognized that "less weight should be given to the timing of the sales when the class period is prolonged." Ex. 4 (Order) at 16 (citing *In re Vantive Corp. Sec. Litig.*, 283 F.3d, 1079, 1092 (9th Cir. 2002) and *Yates v. Mun. Mortg. & Equity LLC,* 744 F.ed 874, 891 (4th Cir. 2014) ("[A] lengthy class period makes it difficult to infer intent from the mere fact of a stock sale, as it is not unusual for insiders to trade at some point during their tenure with a company.")).  In this case, the Complaint covers a *five-year* period.  ¶¶ 113-17.

Although there are five "Insider Selling Defendants" as defined in the Complaint—Gallagher, Anderson, Sheldon, Redmond, and Ellmer (¶ 112)—only three—Gallagher, Redmond, and Ellmer—are Directors.  Gallagher accounts for over 93 percent of the total Insider Selling Defendants' alleged sales ($83.1 million of the alleged $89.2 million), and 97 percent of the alleged Director sales.[31]

/ / /

/ / /

---

[31] These percentages were calculated using a denominator of $89.2 million, based on summing the Individual Defendant selling allegations referenced in paragraphs 113-17.

16

MOTION TO DISMISS VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

*ACTIVE 49772219v18*

GREENBERG TRAURIG, LLP
10845 Griffin Peak Drive
Suite 600
Las Vegas, Nevada 89135
Telephone: (702) 792-3773
Facsimile: (702) 792-9002

GREENBERG TRAURIG, LLP
10845 Griffin Peak Drive
Suite 600
Las Vegas, Nevada 89135
Telephone: (702) 792-3773
Facsimile: (702) 792-9002

Focusing upon the Directors:

> **Ellmer**:  Elmer is alleged to have "worked with airplanes for forty-five years," beginning as a helicopter mechanic and air tanker flight engineer in the U.S. Marine Corps (¶ 57); he joined the Board in 2008 (¶ 58).  Over a <u>four-year period</u> from June 2014 to May 2018, he is alleged to have sold roughly a half-million dollars of stock, with a mere $21,000 of that occurring a month before the Broadcast aired.  ¶ 115.  There is no allegation of any specific knowledge Ellmer possessed in connection with any of these sales, aside from the generic statement that "Ellmer was aware of material, adverse, and non-public information regarding Allegiant's safety deficiencies . . . ." *Id*.

> **Redmond**:  Redmond is alleged to have been a director since 2014 (¶ 21) and is alleged to have sold around $1.7 million during a short period of time in *2015* and *nothing since*.  ¶ 116.  As with Ellmer, there is no allegation as to any specific material inside information that Redmond had at the time of his sales, other than knowledge of "Allegiant's safety deficiencies." *Id.*

> **Gallagher**:  Gallagher is alleged to have been CEO and Chairman of the Board since 2006 (¶ 20) and is said to have sold roughly $83 million over a nearly <u>four-year period</u> (June 2014 to May 2018).  ¶ 113.  These sales account for just 8.6% of Gallagher's total holdings (Ex. 4 (Order) at 16), an amount which numerous courts have held to be inherently nonsuspicious.[32]

As to supposedly suspicious timing of sales in connection with the Broadcast, other than Gallagher, the only Director who allegedly sold is Ellmer, and his sale a month before the Broadcast amounted to a mere $21,000.  ¶ 115.  There is no allegation that Ellmer even knew the Broadcast was forthcoming when he made these modest sales.  As the Court recognized in its Order, Gallagher's alleged sales of over $2 million (¶ 113) amount to a mere 0.43% of his total holdings, and "[t]he years-long class period and numerous events alleged during the class period . . . suggest that the timing was not suspicious.  The months-long time period when the plaintiffs allege that Gallagher knew of the CBS investigation underlines how the

---

[32] *See, e.g., Vantive*, 283 F.3d at 1093-96 (no strong inference of scienter where chairman sold 74% of holdings, CEO sold 17%, CFO sold 32% and COO did not sell any shares); *Ronconi*, 253 F.3d at 435-36 (no strong inference of scienter where general counsel sold 98%, CFO sold 17%, and CEO 10%).

MOTION TO DISMISS VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

*ACTIVE 49772219v18*

lengthy class period weighs against scienter." Ex. 4 (Order) at 16.  These relatively modest sums, by just two Directors, are inherently non-suspicious.  The Complaint alleges that the Individual Defendants were engaged in a "scheme."  ¶ 138.  Were that the case, one would expect selling by all of the Individual Defendants, rather than just a few, and in amounts more realistically associated with a true "bail-out" than what the Complaint alleges.[33]  Moreover, as was the case in *Brendon*, the Complaint contains no allegations about the total number of shares owned by any of the Insider Selling Defendants, or anything about their past trading history.  *Id.* at 17 ("the plaintiffs do not allege facts in the complaint showing how Gallagher's trading during the class period compared to trading before the class period.").[34]  Thus, this case presents a particularly poor vehicle for a court to recognize a new common-law cause of action in Nevada for insider trading.

### 3.   <u>The Unjust Enrichment Allegations are Deficient.</u>

The Complaint's unjust enrichment claim is based entirely upon allegations of insider trading, claiming the Insider Selling Defendants "knew but did not disclose publicly, that the Company had improper safety and airplane maintenance practices . . . [and] was being scrutinized by the FAA and several investigatory news organizations."  ¶ 141.  That does not help Plaintiffs at all.  All airlines are constantly being "scrutinized by the FAA," as they should be.  The supposedly "improper safety and maintenance practices" consist of Plaintiffs' opinions and are unsupported by anything that the FAA has ever said or done vis-à-vis Allegiant.

/ / /

---

[33] *See, e.g., Ronconi*, 253 F.3d at 435 (no inference of scienter where two insiders who made alleged representations sold small percentages of their shares); *In re Silicon Graphics Sec. Litig.*, 183 F.3d 970, 987 (9th Cir. 1999) (no inference of scienter where officers "sold a relatively small portion of their total holdings and traded in a manner consistent with prior practice").

[34] As for the Officer Defendants who sold, Anderson, who started with Allegiant in 2010 (¶ 46), sold around a half-million dollars of stock between May 2017 and March 2018 (¶ 114).  Sheldon, who started with Allegiant in 2004, and became CFO in 2010, and COO in 2014 (¶ 23), allegedly sold about $3.3 million between August 2015 and October 2017 (¶ 117).  The Complaint notes that stock awards were a substantial component of Sheldon's compensation.  ¶ 23.

*ACTIVE 49772219v18*

GREENBERG TRAURIG, LLP
10845 Griffith Peak Drive
Suite 600
Las Vegas, Nevada 89135
Telephone: (702) 792-3773
Facsimile: (702) 792-9002

GREENBERG TRAURIG, LLP
10845 Griffith Peak Drive
Suite 600
Las Vegas, Nevada 89135
Telephone: (702) 792-3773
Facsimile: (702) 792-9002

1   The unjust enrichment claim is merely a back-door attempt to assert a

2   common-law insider trading cause of action under a different name.  For the reasons

3   discussed above—Nevada's Supreme Court would be highly unlikely to recognize

4   such a cause of action, and even if it did, the Complaint's factual allegations fall far

5   short—the unjust enrichment claim fails.[35]

6   ### 4.    The Section 14 Allegations are Deficient.

7   Section 14(a) claims are derivative in nature and subject to especially high

8   pleading standards, requiring satisfaction with both Rule 23.1's particularity

9   pleading requirement, and the Private Securities Litigation Reform Act's

10  requirements that "the complaint shall . . . state *with particularity* facts giving rise

11  to a *strong inference* that the defendant acted with the required state of mind" and

12  "shall specify *each statement* alleged to have been misleading, the reason or reasons

13  why the statement is misleading, and, if an allegation regarding the statement or

14  omission is made on information and belief, the complaint shall state with

15  particularity *all facts* on which that belief is formed."  15 U.S.C. § 78u-4(b)(1)-(2).

16  *See Desaigoudar v. Meyercord*, 223 F.3d 1020, 1023 (9th Cir. 2000) (requiring "a

17  high degree of meticulousness" to plead a Section 14(a) claim); *In re McKesson*

18  *HBOC, Inc. Secs. Litig.*, 126 F. Supp. 2d 1248, 1267 (N.D. Cal. 2000) (dismissing

19  Section 14(a) claims because while plaintiff's "general allegations are plainly

20  sufficient under the Federal Rules of Civil Procedure, they fail under the Reform

21  Act").[36]

22  The Complaint's factual allegations in support of its Section 14(a) claim are

23  almost nonexistent, and thus fall far short of satisfying these stringent pleading

---

[35] Under Nevada law, a cause of action for unjust enrichment requires that (i) the plaintiff have conferred a benefit on the defendant; (ii) the defendant appreciated such benefit; (iii) the defendant accepted and retained the benefit; and (iv) the circumstances are such that it would be inequitable for the defendant to retain the benefit without payment to the plaintiff.  *See Certified Fire Prot., Inc. v. Precision Constr., Inc.*, 283 P.3d 250, 257 (Nev. 2012).  These elements are also not adequately alleged in the Complaint.

[36] *See also Knollenberg v. Harmonic, Inc.*, 152 F. App'x 674, 682 (9th Cir. 2005) ("the PSLRA pleading requirements apply to claims brought under Section 14(a) and Rule 14a-9").

GREENBERG TRAURIG, LLP
10845 Griffith Peak Drive
Suite 600
Las Vegas, Nevada 89135
Telephone: (702) 792-3773
Facsimile: (702) 792-9002

requirements.  The only references to the Section 14(a) claim are found at paragraph 111, which merely identifies the fact that a 2016 proxy statement solicited votes in favor of the Company's 2016 Long-Term incentive Plan ("2016 LTIP"); paragraph 114, which states in a conclusory manner that this solicitation "misrepresented the Board's *actual activities* with respect to risk management and safety"; and paragraph 150 which says the "misrepresentations and omissions . . . [were] an essential link in the Individual Defendants' ability to receive incentive compensation under the 2016 LTIP."

However, the 2016 LTIP itself says nothing about risk management and safety.[37]  The Complaint does not explain what the unidentified misrepresentations or omissions were—*i.e.*, what "actual activities" of the Board are being challenged— much less how they were part of an "essential link" in shareholder voting on a compensation plan that was *not* linked to Allegiant's safety and maintenance practices.  This is plainly insufficient.  *See Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002) (under Section 14(a), "a plaintiff cannot simply allege that an omission was material to properly allege falsity; rather, plaintiffs must show that the omission actually renders *other* statements misleading") (emphasis in original); *Hutton v. McDaniel*, 264 F. Supp. 3d 996, 1018 (D. Az. 2017) (Section 14(a) claim "must specify the reason or reasons why the statements made by [the defendants] were misleading or untrue, not simply why the statements were incomplete.").[38]

The court's decision in *Hutton* is instructive.  There, a manufacturer made a large food recall after the FDA made findings of "unsafe and unsanitary conditions" following state and federal facility inspections.  *Id.* at 1006.  Notwithstanding that,

---

[37] *See* Ex. 5 (5-12-16 Schedule 14A).
[38] *See also New York City Employees' Ret. Sys. v. Jobs*, 593 F.3d 1018, 1022 (9th Cir. 2010) ("To state a claim under § 14(a) and Rule 14a-9, a plaintiff must establish that (1) a proxy statement contained a material misrepresentation or omission which (2) caused the plaintiff injury and (3) that the proxy solicitation itself, rather than the particular defect in the solicitation materials, was an essential link in the accomplishment of the transaction.").

20

MOTION TO DISMISS VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

GREENBERG TRAURIG, LLP
10845 Griffith Peak Drive
Suite 600
Las Vegas, Nevada  89135
Telephone: (702) 792-3773
Facsimile: (702) 792-9002

the court dismissed plaintiff's Section 14(a) misrepresentation claims pertaining to food safety, which were based upon the proxy statement's reference to "management's responsibility to manage risk." *Id.* at 1017-18.  The court held that the plaintiff "failed to allege how disclosure of the . . . omitted pieces of information would cure any specific false or misleading statement in the 2016 Proxy Statement." *Id.* at 1019.  That is obviously true here as well.  Moreover, the case for dismissal is even stronger here because Plaintiffs do not even bother alleging what portion of the proxy contained a false statement or omission, and the Complaint contains no allegation that the FAA had serious compliance issues with Allegiant.

Plaintiffs' Section 14(a) also fails because it is grounded in allegations of mismanagement and breach of fiduciary duty regarding "the Board's actual activities with respect to risk management and safety." ¶ 148.  However, "[u]nder Ninth Circuit law, Section 14(a) claims may not be premised solely on alleged mismanagement or breach of fiduciary duty." *In re Wells Fargo & Co. Shareholder Deriv. Litig.*, 282 F. Supp. 3d 1074, 1102 (N.D. Cal. 2017); *see also Desaigoudar*, 223 F.3d at 1024 (Section 14(a) is inapplicable to claims of mismanagement or breach of fiduciary duty).  The Section 14(a) allegations are indistinguishable from the breach of fiduciary duty allegations articulated at paragraphs 135-39 of the Complaint, which talk about things like the Directors "allow[ing] . . . weak policies to remain [in place] thereby harming the Company and its customers and crew." ¶ 138.

Thus, the Complaint fails to plead adequately the elements of a Section 14(a) claim.

/ / /

/ / /

/ / /

/ / /

/ / /

MOTION TO DISMISS VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

*ACTIVE 49772219v18*

## IV.    **CONCLUSION**

The Complaint fails to satisfy either the procedural or the substantive pleading requirements for pleading demand futility, or the causes of action alleged, and thus should be dismissed with prejudice.

Respectfully submitted this 23rd of April, 2020.

**GREENBERG TRAURIG, LLP**

By    _/s/ Jacob D. Bundick_
MARK E. FERRARIO, ESQ.
Nevada Bar No.: 1625
JACOB D. BUNDICK, ESQ.
Nevada Bar No.: 9772
10845 Griffith Peak Drive, Suite 600
Las Vegas, NV 89135

DANIEL J. TYUKODY, ESQ.
(*Admitted Pro Hac Vice*)
California Bar No.: 123323
**GREENBERG TRAURIG LLP**
1840 Century Park East, Suite 1900
Los Angeles, CA 90067

*Attorneys for Defendants*

**GREENBERG TRAURIG, LLP**
10845 Griffith Peak Drive
Suite 600
Las Vegas, Nevada 89135
Telephone: (702) 792-3773
Facsimile: (702) 792-9002

22

MOTION TO DISMISS VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

ACTIVE 49772219v18

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**GREENBERG TRAURIG, LLP**
10845 Griffith Peak Drive
Suite 600
Las Vegas, Nevada 89135
Telephone: (702) 792-3773
Facsimile: (702) 792-9002

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 23rd day of April, 2020, a true and correct copy of the foregoing was filed electronically via the Court's CM/ECF system.  Notice of filing will be served on all parties by operation of the Court's EM/ECF system, and parties may access this filing through the Court's CM/ECF system.


_/s/ Andrea Flintz_
an employee of Greenberg Traurig, LLP

MOTION TO DISMISS VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

_ACTIVE 49772219v18_