**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| IN RE ALLEGIANT TRAVEL CO. STOCKHOLDER DERIVATIVE LITIGATION[1] | Case No.: 2:18-cv-01864-APG-DJA<br><br>**Order Granting Motion to Dismiss**<br><br>[ECF No. 21] |

This is a shareholder derivative action against several directors and officers of Allegiant Travel Company (Allegiant). Plaintiffs Mark Fullenkamp and Charles Blackburn, on behalf of nominal defendant Allegiant, sue several current and former officers and directors of Allegiant for breach of fiduciary duty, unjust enrichment, breach of fiduciary duty through insider trading, and violations of Section 14 of the Securities Exchange Act of 1934. The defendants are Maurice J. Gallagher, Jr., John Redmond, Gregory Anderson, Scott Sheldon, Eric Gust, Charles W. Pollard, Linda A. Marvin, Gary F. Ellmer, and Montie R. Brewer.

The defendants move to dismiss the plaintiffs' claims, arguing that demand is not excused and even if it were, the allegations in the second amended complaint (SAC) are inadequate. The plaintiffs respond that demand would have been futile primarily because the director defendants face a substantial likelihood of liability and have business relationships with Gallagher. Because the plaintiffs did not establish demand futility, I grant the defendants' motion to dismiss.

////

////

---

[1] Because this case was consolidated, the clerk is directed to amend the caption to include this updated case name.

## I. BACKGROUND

Allegiant is a travel company that operates a commercial airline. According to the SAC, Allegiant has "skimp[ed] on safety and maintenance, from at least mid-2014 to the present." ECF No. 20 at 2. The plaintiffs allege that Gallagher used a strategy of forgoing safety expenses, and that strategy "became a public problem for Allegiant in 2015," when its fleet made 77 "unexpected landings for serious mechanical failures" and five of its planes "failed midair within the span of four hours." *Id.* The plaintiffs further allege that all defendants breached their fiduciary duties to the company because they knew "Allegiant was engaging in a scheme to keep safety and maintenance costs low" but "continued to allow the scheme to occur." *Id.* at 46.

The SAC alleges that these safety problems caught the attention of media organizations, a large shareholder, and a union. The SAC states that in 2015, the New York Times reported on Allegiant's safety problems, and the Teamsters Aviation Mechanics Coalition reported a "dangerous paradigm" related to maintenance procedures. *Id.* at 25. In January 2016, a letter from a large Allegiant shareholder, CtW Investment Group, allegedly discussed safety issues and called for measures such as a safety committee. *Id.* at 20-21. And in November 2016, the Tampa Bay Times reported on an accidentally unredacted report from the Federal Aviation Administration finding "deliberate and systemic acts of noncompliance" regarding Allegiant's maintenance. *Id.* at 18, 27.

CBS News devoted part of its 60 Minutes show to safety concerns about Allegiant in April 2018. *Id.* at 3. The SAC alleges that three defendants sold Allegiant shares worth $2.3 million "just over a month prior" to the 60 Minutes segment. *Id.* The plaintiffs allege that these defendants were "certainly aware that CBS News was producing the episode," because CBS News spent seven months compiling the segment and contacted Allegiant several times. *Id.* at 3.

Because of this alleged insider trading, the SAC asserts claims for breach of fiduciary duty and unjust enrichment against Gallagher, Anderson, Sheldon, Redmond, and Ellmer.

After the 60 Minutes segment was announced, "shares of Allegiant stock fell $18.85 per share, or over 11.4%." *Id.* at 4. The plaintiffs allege that Allegiant's safety problems have subjected the company to three lawsuits, including a class action in the District of Nevada alleging federal securities violations, *Brendon v. Allegiant Travel Co.*,[2] "which is pending final approval of a $4 million settlement." *Id.*

The other misconduct alleged by the plaintiffs relates to an Allegiant proxy statement. In May 2016, Gallagher, Brewer, Ellmer, Marvin, Pollard, and Redmond "issued a definitive proxy statement soliciting shareholder votes" for "management proposals including the approval of the Company's 2016 Long-Term Incentive Plan" (LTIP). *Id.* at 34. The SAC alleges that these six defendants violated Section 14 of the Securities Exchange Act of 1934 by "misrepresenting their activities" related to "safety management in order to obtain shareholder approval of the 2016 LTIP." *Id.* at 43.

**II.  ANALYSIS**

"Devised as a suit in equity, the purpose of the derivative action was to place in the hands of the individual shareholder a means to protect the interests of the corporation from the misfeasance and malfeasance of faithless directors and managers." *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 95 (1991) (internal quotation marks and citation omitted). But "[t]o prevent

---

[2] Under Federal Rule of Evidence 201, I take judicial notice of the order granting in part the motion to dismiss in *Brendon*, No. 2:18-cv-01758-APG-BNW, ECF No. 45, as well as the order granting preliminary approval of the settlement in that case, ECF No. 73. *Harris v. Cnty. of Orange*, 682 F.3d 1126, 1131-32 (9th Cir. 2012). The defendants request that I take judicial notice of three additional documents, but because I grant their motion to dismiss without considering those documents, I need not address their request.

3

abuse of this remedy," a shareholder must "demonstrate that the corporation itself had refused to proceed after suitable demand, unless excused by extraordinary conditions." *Id.* at 95-96 (internal quotation marks and citation omitted). Accordingly, Federal Rule of Civil Procedure 23.1 requires that "a shareholder must either demand action from the corporation's directors before filing a shareholder derivative suit, or plead with particularity the reasons why such demand would have been futile." *Arduini v. Hart*, 774 F.3d 622, 628 (9th Cir. 2014). The law of the state of incorporation, in this case Nevada, determines whether demand is futile. *Rosenbloom v. Pyott*, 765 F.3d 1137, 1148 (9th Cir. 2014) (citation omitted).

The Supreme Court of Nevada has adopted Delaware's two tests for demand futility from *Aronson v. Lewis*, 473 A.2d 805 (Del. 1984), and *Rales v. Blasband*, 634 A.2d 927 (Del. 1993). *Shoen v. SAC Holding Corp.*, 137 P.3d 1171, 1184, 1186 (Nev. 2006), *abrogated on other grounds*, *Chur v. Eighth Judicial District Ct.*, 458 P.3d 336 (Nev. 2020). *Aronson* applies when "a decision of the board of directors is being challenged in the derivative suit." *Rales*, 634 A.2d at 933 (emphasis omitted). *Rales* applies when "the board that would be considering the demand did not make a business decision which is being challenged in the derivative suit," including scenarios "where directors are sued derivatively because they have failed to do something*." Id.* at 933-34, 934 n.9.

The plaintiffs do not identify whether the *Aronson* or *Rales* test should apply, and the defendants note that the SAC "is ambiguous as to whether it is challenging any actual decision by the Board." ECF No. 28 at 7. The plaintiffs argue that because both tests consider whether a majority of the board is interested, the SAC "need only raise a reasonable doubt that a majority of the Board is not disinterested." ECF No. 25 at 13.

Although "in practice, the *Aronson* and *Rales* 'disinterested and independent' tests often amount to the same analysis," I must identify which test applies. *Shoen*, 137 P.3d at 1184 n.62; *see also In re Amerco Derivative Litig.*, 252 P.3d at 697-98 (determining which test applies). In this case, *Aronson* applies to the breach of fiduciary duty and Section 14 claims because they challenge business decisions by the board. The plaintiffs do not allege that the board simply failed to act on safety measures, but rather that the board purposely approved a course of action to cut costs and purposely included misrepresentations in the proxy statement to gain approval of their compensation. *Rales* applies to the breach of fiduciary duty through insider trading and unjust enrichment claims because they allege that some defendants individually engaged in insider trading, which was not apparently a board decision.[3]

Under *Aronson*, I evaluate whether particularized allegations in the complaint create a reasonable doubt that: "(1) the directors are disinterested and independent [or] (2) the challenged transaction was otherwise the product of a valid exercise of business judgment." *Shoen*, 137 P.3d at 1182 (alteration in original) (quoting *Aronson*, 473 A.2d at 814). The *Rales* test requires me to "evaluate whether particularized facts in the . . . complaint 'raise[ ] a reasonable doubt that the current board of directors would be able to exercise its independent and disinterested business judgment in responding to a demand.'" *In re Amerco Derivative Litig.*, 252 P.3d 681, 698 (Nev. 2011) (quoting *Shoen*, 137 P.3d at 1185).

Under the first prong of *Aronson*, demand is excused "if the complaint's allegations, taken as true and with all fair inferences drawn in favor of the plaintiff, show that" the business

---

[3] To the extent that the plaintiffs may rely on *Aronson* for these claims and on *Rales* for the breach of fiduciary duty and Section 14 claims, they fail to establish demand futility under those tests as well because they have not created a reasonable doubt as to the disinterestedness or independence of a majority of the board, as described below.

5

judgment rule does not apply "to the board majority approving the transaction because those directors are interested, or are controlled by another who is interested, in the subject transaction." *Shoen*, 137 P.3d at 1182 (internal quotation marks and citation omitted). The second prong of *Aronson* "is implicated only if the business judgment rule remains applicable because a majority of directors are disinterested or independent of one who is interested under the first prong." *Id.* (citation omitted). Codified at Nevada Revised Statutes § 78.138, "[t]he business judgment rule is a 'presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company.'" *Shoen*, 137 P.3d at 1178-79 (quoting *Aronson*, 473 A.2d at 812).

As previously mentioned, *Rales* and *Aronson* often amount to the same analysis because they both evaluate whether directors are disinterested and independent. "Allegations of mere threats of liability through approval of the wrongdoing or other participation . . . do not show sufficient interestedness." *Shoen*, 137 P.3d at 1183. Rather, "interestedness because of potential liability can be shown only in those 'rare case[s] . . . where defendants' actions were so egregious that a substantial likelihood of director liability exists.'" *Id.* at 1184 (quoting *Seminaris v. Landa*, 662 A.2d 1350, 1354 (Del. Ch. 1995)). Under Nevada law, "a director or officer is not individually liable . . . for any damages as a result of any act or failure to act in his or her capacity as a director or officer unless" the presumption of the business judgment rule is rebutted and "[i]t is proven that" the act or failure to act was a breach of fiduciary duty that "involved intentional misconduct, fraud or a knowing violation of law." Nev. Rev. Stat. § 78.138(7). To show "intentional misconduct" or a "knowing violation of law," a "claimant must establish that the director or officer had knowledge that the alleged conduct was wrongful." *Chur*, 458 P.3d at 342.

6

I must determine whether demand would be futile as to the majority of the board, and when the board is even-numbered, "the 'majority' equals at least one-half of that board." *Shoen*, 137 P.3d at 1184 n.62. The plaintiffs state that at the time this action was commenced, six directors comprised Allegiant's board: Gallagher, Redmond, Pollard, Marvin, Ellmer, and Brewer. Thus, demand is excused if it would be futile as to three or more directors.

**A. Breach of Fiduciary Duty**

The SAC alleges that demand is futile as to this claim because the director defendants approved lax safety procedures and "dangerous cost-cutting safety measures," and thus face a substantial likelihood of liability for their actions.[4] ECF No. 20 at 43. The defendants argue that these allegations are insufficient, especially given *Chur*'s clarification that Nevada law requires "knowledge that the alleged conduct was wrongful" for a director to be personally liable. *Chur*, 458 P.3d at 342. The plaintiffs respond that the directors had such knowledge because they "had ample experience in the airline industry and, therefore, fully understood the importance of safety and maintenance," and they knew about the alleged safety failures because a letter from one of Allegiant's largest stockholders raised that issue. ECF No. 25 at 16.

The plaintiffs' allegations do not show a substantial likelihood of director liability for breach of fiduciary duty. The allegations do not amount to more than "[a]llegations of mere threats of liability" that are not sufficient to excuse demand. *Shoen*, 137 P.3d at 1183. For instance, the SAC fails to specify which cost-cutting measures or deficient procedures the board

---

[4] The SAC further alleges that the directors "participated in and approved of . . . the filing of and dissemination of false and misleading information as alleged herein, and therefore are substantially likely to be held liable for the misconduct complained of herein." ECF No. 20 at 43. It is unclear what alleged misconduct and false information the plaintiffs are referencing. This allegation is not particularized and therefore fails to create a reasonable doubt that the directors were disinterested.

7

approved, nor does it tie any particular cost-cutting decision to a likelihood of liability as a result. Not every cost-cutting decision or deficient procedure gives rise to a substantial likelihood of liability, and absent more specific allegations, the plaintiffs have failed make the required showing.  Moreover, the plaintiffs assert that these actions were intentional misconduct or knowing violations of law mainly because the directors have experience in the airline industry, but that is also not sufficient to excuse demand.[5]  It is unreasonable to infer that the directors knew that unspecified cost cutting or deficient procedures were wrongful just because they are experienced in this industry, and the plaintiffs do not cite any case law in support of that assertion.

### B.  Section 14

The plaintiffs allege that demand is futile because the director defendants "misrepresent[ed] their activities in connection with risk and safety management in order to obtain shareholder approval of" the 2016 LTIP that "personally enriched" the defendants, and therefore "they face a substantial likelihood of liability for violating Section 14 of the Securities Exchange Act of 1934." ECF No. 20 at 43.  The defendants argue that the SAC's limited allegations do not demonstrate a substantial likelihood of liability.  The plaintiffs respond by citing the SAC's allegations that the defendants "caused Allegiant to cut corners on required maintenance to reap higher profits" and that a settled lawsuit against Allegiant claimed that a radar system should have detected turbulence and "passengers should have been warned." ECF No. 20 at 17, 27.

---

[5] The plaintiffs argue that under the core operations doctrine, they are entitled to an inference that the director defendants knew about the safety and maintenance issues.  But the SAC still lacks factual allegations suggesting that the directors knew their conduct was wrongful.

8

Section 14(a) and Securities Exchange Commission Rule 14a-9 "disallow the solicitation of a proxy by a statement that contains either (1) a false or misleading declaration of material fact, or (2) an omission of material fact that makes any portion of the statement misleading." *Desaigoudar v. Meyercord*, 223 F.3d 1020, 1022 (9th Cir. 2000). To prevail on a Section 14(a) claim, a "plaintiff must demonstrate that the misstatement or omission was made with the requisite level of culpability and that it was an essential link in the accomplishment of the proposed transaction." *Id.*

The SAC fails to allege any of these elements with any particularity. The SAC does not even identify any specific misstatement or describe why it is material. Consequently, the plaintiffs have not supported their allegation that the defendants face a substantial likelihood of liability on this claim.

**C. Insider Trading**

The plaintiffs allege that Gallagher, Redmond, and Ellmer were "aware of material, adverse, and non-public information regarding Allegiant's safety deficiencies" and the company's related statements, and that they engaged in insider trading when they sold shares before that information became public. ECF No. 20 at 34-35. According to the SAC, Gallagher sold 504,845 shares with proceeds of $83,073,245 between June 2014 and May 2018 and sold 12,465 shares worth over $2 million one month before the 60 Minutes broadcast. ECF No. 20 at 35. Redmond allegedly sold 7,500 shares with proceeds of $1,679,895 between August 3, 2015 and August 12, 2015. *Id.* Ellmer allegedly sold 3,420 shares with proceeds of $569,257 between June 2014 and May 2018, including 120 shares with proceeds exceeding $21,000 about one month before the 60 Minutes broadcast. *Id.*

The plaintiffs allege that demand would have been futile as to this claim because Gallagher, Redmond, and Ellmer face a substantial likelihood of liability "for breaching their fiduciary duties of loyalty and good faith [by] engaging in illegal insider trading." *Id.* at 44. The defendants argue that Nevada would not recognize a common law cause of action for breach of fiduciary duty through insider trading, but that even if it did the plaintiffs fail to establish demand futility. The plaintiffs respond that the opposite is true.

The Supreme Court of Nevada has not addressed whether this cause of action exists. Consequently, I must predict how it would decide this question. *See Gravquick A/S v. Trimble Navigation Int'l Ltd.*, 323 F.3d 1219, 1222 (9th Cir. 2003). The defendants argue that the Supreme Court of Nevada would not recognize this cause of action because Nevada law requires injury for a breach of fiduciary duty claim. According to the defendants, other jurisdictions with a similar requirement have declined to recognize the cause of action because they reason that insider trading does not cause an injury and thus does not satisfy the elements for breach of fiduciary duty. The defendants also argue that recognition of this cause of action goes against the current trend, and "Nevada has enacted some of the most director-friendly statutes in the Nation." ECF No. 21 at 16. The defendants point to *Chur*'s criticism of *Shoen* "for giving rise to a purported common-law exception of 'gross negligence' to the statutory standard" in NRS § 78.138(7). *Id.* The plaintiffs argue that Nevada would recognize the cause of action because Delaware recognizes this type of claim and "[t]he theory of breach underlying Delaware's . . . claim is long recognized under Nevada law as well." ECF No. 25 at 24.

In *Stalk v. Mushkin*, the Supreme Court of Nevada held that "a breach of fiduciary duty claim seeks damages for injuries that result from the tortious conduct of one who owes a duty to another by virtue of the fiduciary relationship." 199 P.3d 838, 843 (Nev. 2009) (citation

10

omitted). That case involved an attorney's breach of fiduciary duty. *Id.* at 843. Two years after *Stalk*, *Amerco* evaluated breach of the fiduciary duty of loyalty in a shareholder derivative suit and instead looked to *Shoen* and Delaware law, rather than *Stalk*, for guidance. *Amerco*, 252 P.3d at 700-01. Citing Delaware cases, *Shoen* stated that "the duty of care consists of an obligation to act on an informed basis" and "the duty of loyalty requires the board and its directors to maintain, in good faith, the corporation's and its shareholders' best interests over anyone else's interests." 137 P.3d at 1178 (citations omitted). *Amerco* then noted the requirement that a director's breach must involve "intentional misconduct, fraud, or a knowing violation of law" for the director to be held personally liable. 252 P.3d at 701 (quoting NRS § 78.138(7)(b)).

Based on *Amerco* and *Shoen*, I predict that the Supreme Court of Nevada would recognize the cause of action for breach of fiduciary duty premised on insider trading. *Amerco*'s use of *Shoen*'s definition of the fiduciary duty of loyalty, together with the statutory requirement in NRS § 78.138(7)(b), does not require injury as an element. Insider trading could satisfy *Amerco*'s formulation of breach of the fiduciary duty of loyalty because a director who engages in insider trading conceivably puts his or her interests over the interests of the corporation and its shareholders. And insider trading involves intentional misconduct or a knowing violation of law.

This conclusion is supported by the fact that the Supreme Court of Nevada adopted Delaware's *Rales* and *Aronson* tests for demand futility and looked to Delaware cases for definitions of the fiduciary duties of care and loyalty. *Shoen*, 137 P.3d at 1178, 1184, 1186. And in recognizing a claim for aiding and abetting the breach of a fiduciary duty, the court adopted Delaware's standard. *Amerco*, 252 P.3d at 701-02. Thus, I predict the Supreme Court of Nevada would follow Delaware in recognizing a cause of action for breach of fiduciary duty based on insider trading.

Under Delaware law, a plaintiff "must show that: 1) the corporate fiduciary possessed material, nonpublic company information; and 2) the corporate fiduciary used that information improperly by making trades because she was motivated, in whole or in part, by the substance of that information." *In re Oracle Corp.*, 867 A.2d 904, 934 (Del. Ch. 2004), *aff'd*, 872 A.2d 960 (Del. 2005). "This doctrine is not designed to punish inadvertence, but to police intentional misconduct." *Guttman v. Huang*, 823 A.2d 492, 505 (Del. Ch. 2003).

The plaintiffs have not alleged with particularized facts that the information about Allegiant's safety problems was material and nonpublic. The SAC alleges that the New York Times reported on Allegiant's safety problems as early as April 2015, which was months before Redmond allegedly sold shares. ECF No. 20 at 25. The Tampa Bay Times also reported on Allegiant's safety problems in November 2016. *Id.* at 3, 27. The 60 Minutes show aired on April 15, 2018, and the segment was announced on April 13, 2018. *Id.* at 30. Absent further allegations explaining what was nonpublic and when in relation to particular sales of stock, the SAC fails to plausibly allege nonpublic material information because news outlets have reported on safety problems at Allegiant for years.

Moreover, the SAC does not allege any facts showing that the directors made these trades because they were "motivated, in whole or in part, by the substance of that information." *In re Oracle Corp.*, 867 A.2d at 934. Only Gallagher and Ellmer are alleged to have sold stock one month before the 60 Minutes show, and these sales appear to be a small fraction of the total illegal sales alleged. Even if those allegations as to Gallagher and Ellmer were sufficient, Gallagher and Ellmer do not comprise a majority of the board. The SAC thus fails to allege that Gallagher, Redmond, and Ellmer face a substantial likelihood of liability as to this claim, and demand is therefore not excused.

### D. Unjust Enrichment

The plaintiffs assert an unjust enrichment claim against Gallagher, Anderson, Sheldon, Redmond, and Ellmer because of their alleged illegal sales of Allegiant common stock. However, the plaintiffs made no demand futility allegations as to this claim specifically. The allegations supporting this claim appear to be based on the insider trading claim. Even when applying the demand futility arguments for insider trading to this claim, the plaintiffs fail to establish that demand would have been futile, as already discussed.

### E. Financial Statements

The SAC alleges that Marvin, Ellmer, Pollard, and Redmond, who were all audit committee members, filed inaccurate financial statements "and therefore face a substantial likelihood of being held liable for breaching their fiduciary duties." ECF No. 20 at 44. This allegation is conclusory and is not supported anywhere in the SAC. The plaintiffs did not respond to the defendants' argument that "there is no allegation of false financial statements in the Complaint, nor was there in *Brendon*." ECF No. 21 at 10.

This conclusory and unsupported allegation does not create a reasonable doubt as to the disinterestedness or independence of any director. The plaintiffs' response discusses the liability of these directors only with respect to false and misleading statements about safety. The SAC did not make this allegation in pleading demand futility as to the audit committee members and did not reference any specific statement. However, the SAC does generally allege that demand is futile as to all director defendants because they approved of disseminating false statements. I have already addressed the inadequacy of that allegation. So even considering the allegation in the demand futility analysis as to the audit committee members, demand is still not excused.

/ / / /

### F. Gallagher, Marvin, Redmond, and Ellmer

The SAC alleges that Gallagher is not independent because he faces a substantial likelihood of liability in the securities class action and "any investigation of this misconduct could potentially increase his liability in that case." ECF No. 20 at 43-44. The plaintiffs argue that Gallagher is interested because he has been the CEO of Allegiant since 2006, he received compensation from Allegiant, and "Allegiant's 2019 Proxy Statement concedes that Gallagher is not independent." ECF No. 25 at 16. The defendants argue that Gallagher does not face a substantial likelihood of liability because I preliminarily approved the parties' settlement in the class action and no objections had been filed as of the time the present motion was filed.

The *Rales* test applies to these allegations because they do not challenge a business decision by the board. "[A] director who has divided loyalties in relation to, or who has or is entitled to receive specific financial benefit from, the subject transaction, is an interested director." *Shoen*, 137 P.3d at 1182 (citation omitted). Additionally, directors are interested if they "appear on both sides of a transaction [ ]or expect to derive any personal financial benefit from it in the sense of self-dealing, as opposed to a benefit which devolves upon the corporation or all stockholders generally." *Aronson*, 473 A.2d at 812. "In order to show lack of independence, the complaint of a stockholder-plaintiff must create a reasonable doubt that a director is not so 'beholden' to an interested director . . . that his or her 'discretion would be sterilized.'" *Beam ex rel. Martha Stewart Living Omnimedia, Inc. v. Stewart*, 845 A.2d 1040, 1050 (Del. 2004) (quoting *Rales*, 634 A.2d at 936).

The SAC's allegations are insufficient to create a reasonable doubt that Gallagher was disinterested or independent. First, the plaintiffs do not allege that he was beholden to any director and do not otherwise explain how he lacked independence, so they have not created a

14

reasonable doubt that he was independent. *See Beam*, 845 A.2d at 1049-50 ("The court must make [the independence] determination by answering the inquiries: independent from whom and independent for what purpose?"). And the plaintiffs did not indicate how the 2019 proxy statement suggests that Gallagher is not independent. The plaintiffs did not quote from this proxy statement or cite to any exhibit or part of the SAC in making this assertion, and the SAC does not appear to reference a 2019 proxy statement.

Second, the plaintiffs have not pleaded with particularized facts that Gallagher faced a substantial likelihood of liability due to the securities class action. The existence of a related lawsuit, without more, does not indicate that Gallagher faced a substantial likelihood of liability. *See Seminaris*, 662 A.2d at 1355. And by the time the SAC was filed, the settlement had been preliminarily approved.

The SAC next alleges that Marvin, Redmond, and Ellmer are not independent because of their business relationships with Gallagher. Because Gallagher is not interested, it is irrelevant whether Marvin, Redmond, and Ellmer are independent of him. *See Brehm v. Eisner*, 746 A.2d 244, 258 (Del. 2000) (holding that the court need not consider the independence of the other directors because the complaint did not create a reasonable doubt that the CEO they were allegedly beholden to was disinterested). Even if Gallagher were interested, the plaintiffs' allegations about the relationships of Marvin, Redmond, and Ellmer with Gallagher are not sufficient to allege that they were beholden to him. *See Beam*, 845 A.2d at 1050 ("Allegations of mere personal friendship or a mere outside business relationship, standing alone, are insufficient to raise a reasonable doubt about a director's independence."). The plaintiffs thus have not raised a reasonable doubt that these three directors are independent.

/ / / /

### G. Summary

The SAC fails to allege that demand would have been futile as to any claim. The plaintiffs therefore lack standing. *Shoen*, 137 P.3d at 1180 ("A shareholder's failure to sufficiently plead compliance with the demand requirement deprives the shareholder of standing and justifies dismissal of the complaint for failure to state a claim upon which relief may be granted."). I dismiss each claim without prejudice.

## III. CONCLUSION

I THEREFORE ORDER that the defendants' motion to dismiss **(ECF No. 21) is GRANTED**.

I FURTHER ORDER that plaintiffs Mark Fullenkamp and Charles Blackburn may file an amended complaint by January 19, 2021.

I FURTHER ORDER that the clerk of the court shall amend the caption of this case with the updated case name.

DATED this 18th day of December, 2020.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE